IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAYTRON L. MOBLEY, SR., #346455,　　　\*

v.　　　\*　Civil Action No. CCB-18-2856

C.O. II HEATH R. MICHAEL,[1]　　　\*
C.O. II WALTER OAKES,
C.O. II EARL CLARK,　　　\*

　　　\*
　　　\*\*\*

# MEMORANDUM

Plaintiff Daytron L. Mobley, Sr., who is incarcerated at the North Branch Correctional Institution in Cumberland, Maryland ("NBCI"), filed a complaint in September 2018 alleging that on December 10, 2017, he was purposefully placed in a cell with a member of a rival gang, who attempted to harm him. ECF No. 1.[2] Mobley seeks unspecified damages and transfer to another prison. ECF No. 1, p. 3, ¶ IV.

Mobley named Correctional Officer "Heath Miller" as the individual responsible for placing him in harm's way. He claimed that correctional officers Walter Oakes and Earl Clark covered up the assault. After Clark and Oakes responded to the complaint with a motion to dismiss or for summary judgment (ECF No. 14), Mobley moved to add a third correctional defendant (ECF No. 17) but did not name the individual or explain the individual's alleged involvement in the case. Thereafter, he identified Correctional Officer Heath Michael as a defendant (ECF No. 19) and moved to amend or correct the complaint to substitute "Heath Michael" for "Heath Miller," who

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of all Defendants' names, as reflected in this caption. The Court notes the spelling of Defendant Oakes' surname in his Declaration, where he is identified as Walter Oakes. ECF No. 14-3.

[2] This opinion cites to the pagination assigned by the Court's electronic docket.

was incorrectly named and never served with summons in this lawsuit. (ECF No. 22). The Motion to Amend/Correct Complaint was granted (ECF No. 27) and counsel for Clark and Oakes accepted service and responded on behalf of Defendant Michael. (ECF No. 31).

The dispositive motion (ECF No. 14), which is opposed by Mobley (ECF Nos. 32 and 33), may be decided without a hearing. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Mobley's "affidavit" (ECF No. 28) and "declarations" (ECF Nos. 24 and 26) will be STRICKEN[3] and the Correctional Defendants' dispositive motion as supplemented (ECF Nos. 14, 31), construed as a motion for summary judgment,[4] will be GRANTED.

## Background

### A. Plaintiff Mobley's Allegations

In his unverified Complaint,[5] Mobley states that on December 10, 2017, Defendant Heath Michael (incorrectly identified as Heath Miller) escorted him from the shower and placed him in cell 1-B-52 with fellow prisoner Justin Davis, allegedly on instructions of the housing unit manager. ECF No. 1, p. 3, ¶ 3. Michael then left the area, and Davis placed Mobley in a choke

---

[3] Mobley's "Affidavit" (ECF No. 28) and other declarations (ECF Nos. 24 and 26) relate to separate incidents he deems harassment that involve Defendant Clark and other correctional personnel and occurred on September 15, 2018, and throughout the early months of 2019. While Mobley may file separate civil rights actions concerning these incidents using forms available from the Clerk, these matters, which occurred long after the December 10, 2017, incident that is at issue here, appear unrelated and will not be addressed in this memorandum opinion..

[4] Defendants' dispositive motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

[5] Although Mobley provides no affidavit, he attaches an affidavit from fellow prisoner Clarence Sanders. Sanders states that Mobley was placed in the cell by Defendant Michael and that Mobley and Davis were in the cell approximately 10-15 minutes before officers "finally came and corrected the matter[.]" ECF No. 1-1, p. 1. Sanders states Michaels "should know that these two inmates are enemies due to one being blood, and the other BGF." *Id.* Significantly, Sanders does not state that any actual physical contact occurred between Mobley and Davis.

hold. *Id.* Defendant Oakes, Officer Bosley[6] and others responded, broke up the fight, handcuffed both men, and escorted each to separate areas. *Id.* Once separated, Mobley and Davis were told by Clark and Oakes to sign statements saying nothing happened. *Id.* Defendant Clark told Mobley that if he did not sign, he would be issued an infraction for escape, being out of bounds, and "other rulings to keep me on lockup." *Id.*, p. 4. Mobley states that since the incident, Clark and Oakes "threaten" him, use racial slurs, and tell him he "will die in prison even if they have to do it themselves."[7] *Id.*

## B. Defendants' Assertions

On December 10, 2017, Defendant Clark was assigned to Mobley's housing unit, a unit reserved for prisoners placed in administrative or disciplinary segregation. ECF No. 14-2, ¶ 3, Declaration of Earl Clark. Clark received a radio call from the housing unit control center that a prisoner had been placed in the wrong cell and needed to be moved. *Id.* Clark arrived at the cell within one minute of receiving the radio call and saw Mobley and another prisoner, Justin Davis, standing in the cell talking to one another. *Id.* Clark did not observe any physical or verbal altercation, nor did he observe Mobley to have suffered any physical injuries. *Id.* The inmates were handcuffed and taken to separate strip cages to be searched for contraband, in accordance with institutional security procedures. *Id.*

---

[6] Officer Bosley is not named a party to this action.

[7] Defendants deny this misconduct occurred. ECF No. 14-2, Declaration of Earl Clark, ¶¶ 4, 5; ECF No. 14-3, Declaration of Walter Oakes, ¶¶ 5, 6. Verbal abuse of prisoners, without more, does not state a claim of assault. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Rather, to state a colorable claim of threats made by correctional officers, there must be an allegation of actions apparently designed to carry out the threat, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); evidence the threats were intended to intimidate a prisoner from exercising his right of access to courts, *id*, *see also Russell v. Oliver*, 552 F.2d 115, 116 (4th Cir. 1977), or be coupled with overt, punitive and arbitrary action, *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir. 1975). The record does not support such claims.

3

Mobley never told Clark on or before December 10, 2017, that Davis posed a threat to him. *Id.*, ¶ 4. Clark avers that he did not direct the two prisoners to be placed in a cell together so that Davis could harm or kill Mobley, *id.*, ¶ 5, or that he ever threatened Mobley with rule infractions or forced him to provide a written statement as alleged, *id.*, ¶ 6.

Defendant Oakes also was assigned to Mobley's unit on December 10, 2017. ECF No. 14-3, Declaration of Walter Oakes, ¶ 3. While on duty that day, Oakes was directed to go to a cell where he saw Mobley talking to Justin Davis. *Id.* Oakes observed the men standing and talking to one another. *Id.* He did not observe a physical or verbal altercation or that Mobley suffered a physical injury. *Id.* Oakes avers that Mobley never told him on or before December 10, 2017, that Davis posed a threat to Mobley. *Id.*, ¶ 4. Oakes never directed or caused Mobley to be placed in the cell with Davis to cause Mobley harm or death. *Id.*, ¶ 5. Further, Oakes never threatened Mobley with a rule infraction or forced him to provide a written statement as he alleges. *Id.*, ¶ 6. Oakes denies using racial slurs or telling Mobley he would die in prison. *Id.*

According to Mobley's Offender Case Management System records (OCMS), he is documented as an affiliated member of the BGF gang. ECF No. 14-4, Declaration of John White, Correctional Case Manager II, with attachments, p. 3. The OCMS record for inmate Justin Davis indicates no gang affiliation. *Id.*, p. 4. Correctional institutions maintain Enemy List files in which a prisoner may request a fellow prisoner whom they perceive to be a threat placed on their Enemy List, but such a claim is investigated and verified before the individuals are listed as enemies. *Id.*, p. 1, ¶ 4. Once verified, Case Management will add the names to the Enemy Alert so that individuals may be housed separately to avoid altercations. *Id.* There is no record in Mobley's case file that he ever submitted a request to have Davis placed on his Enemy List. *Id.*, pp. 1-2, ¶ 4.

Defendants note that Mobley appeared at his monthly scheduled administrative segregation review four days after the alleged December 10, 2017, incident and did not voice any concerns or complaints about his safety regarding inmate Davis. *Id.*, p. 2, ¶ 5. Neither prisoner requested the other be placed on their respective OCMS Enemy Alerts & Retractions lists either prior to or subsequent to the alleged incident date. ECF No. 14-4, pp. 5-6.

Both Mobley and Davis submitted Administrative Remedy Procedure ("ARP") grievances regarding the alleged incident. *Id.*, pp. 7, 34-36. Davis's ARP grievance included written statements, dated December 10, 2017, that both he and Mobley provided regarding the alleged incident in which they both stated no assault occurred. *Id.*, pp. 44-45. Mobley's statement, which he signed and was witnessed by two officers, including Oakes, specifically states that he was placed in the cell but was brought out moments later and that nothing happened to him while he was in the cell. *Id.*, p. 44.

Mobley's medical records indicate the only inmate Sick Call requests he filed after the alleged incident were submitted almost three weeks later regarding his prescription medication refills and were entirely unrelated to the alleged incident. ECF No. 14-5, Declaration of Olivia Pyles, Medical Records Custodian, with pertinent medical records, pp. 2-3. The plaintiff refused to attend a scheduled physical examination on January 3, 2018. *Id.*, p. 6.

Defendant Michael was on duty on December 10, 2017, but assigned to a completely different housing unit located in a separate area of the prison compound and avers he had no contact whatsoever with Mobley during the course of his shift that day. ECF No. 31-2, Declaration of Heath Michael, ¶ 3. Michael avers he did not escort Mobley from his shower to the cell as alleged and that he was not involved in the incident. *Id.* Michael's duty assignment for the December 10, 2017, 3-11 p.m. shift was Housing Unit 4 (HU #4); he was not assigned to the

plaintiff's unit (Unit 1). ECF No. 31-3, Declaration of John White, Correctional Case Manager, ¶ 3. Defendant Michael's name is written on the Post Assignment Work Sheet for that shift as "Michael, H.R." *Id., see also,* ECF No. 31-3, Post Assignment Work Sheet, p. 2.[8]

**Standard of Review**

Defendants move for summary judgment. Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat a summary judgment motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should

---

[8]The Post Assignment Worksheet does state that an Officer "Michael, H" was assigned to Housing Unit #1 D Wing, and Officer "Michael, H.R." was assigned to Housing Unit #4 D Wing. Both ARP grievances indicate Mobley was placed in the cell by an "officer Micheal(s)," not "Heath Miller," which is the name of the officer alleged in Mobley's Complaint. ECF No. 14-4, pp. 7, 34. No correctional officer by the name of Heath Miller has ever been employed at NBCI. *Id.,* p. 1, ¶ 3. Mobley's written statement provided on the day of the incident also states an "officer Micheal" placed him in the cell. *Id.,* p. 44.

6

"view the evidence in the light most favorable to . . . the nonmovant" and "draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

Mobley's Complaint is best construed as an Eighth Amendment claim for the officers' alleged failure to protect him from violence. To prevail, Mobley must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh'. . . [but] '[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). Essentially, Defendants must know of and disregard an excessive risk of harm to Mobley, having themselves inferred the presence of the risk. *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

Objectively, the evidence "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (internal citation omitted). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Subjectively,

7

the evidence must establish that prison personnel had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was in fact drawn, *id.* at 837. And may be shown "in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016).

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. Failure to take reasonable action in an ongoing assault, however, can amount to deliberate indifference. *See Cox v. Quinn*, 828 F.3d 227, 236-37 (4th Cir. 2016) (denying correctional officers' summary judgment motion because of a genuine dispute as to whether they were deliberately indifferent to prisoner's substantial risk of serious harm where the officers were alleged to have failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (*en banc*) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

In this case, irrespective of who placed Mobley in a cell with Davis, Mobley was removed from the cell within minutes and sustained no documented injury—and possibly no threat of injury—as a result. While it may be that a different correctional officer Michael escorted him to the cell, and that he and the other prisoner in the cell, Justin Davis, were rival gang members, where there is no forewarning that Mobley was in danger of being assaulted, and no proffered

8

admissible evidence proving that an assault even took place, an Eighth Amendment violation has not occurred. The Eighth Amendment prohibits deliberate indifference to a known risk of harm and, here, there is no genuine dispute of material fact as to the presence of such deliberate indifference. Further, Mobley's unverified claim that he was precluded from complaining about the incident is belied by the verified declarations submitted by Defendants and is contradicted by the lack of any medical records and his witnessed statement that no physical injury occurred.

Defendants are entitled to summary judgment in their favor. A separate order follows.

Date: 7/29/19

_____CCB_____
Catherine C. Blake
United States District Judge